Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EDGARDO L. PÉREZ, MARGAMARIE MIRANDA DE JESÚS Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>vs.<br><br>ALEJANDRO BRITO Y BRITO DEVELOPMENT GROUP<br><br>Peticionarios | KLCE202201300 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020CV01943<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa y la Jueza Martínez Cordero[1].

Martínez Cordero, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de marzo de 2023.

Comparece ante este Tribunal intermedio Alejandro Brito (en adelante, señor Brito) y Metro Avanti Properties, Inc. h/n/c Brito Development (en adelante, Brito Development Group), en conjunto parte peticionaria, a través de un recurso de *Certiorari* instado el 29 de noviembre de 2022 y nos solicita que se revoque la *Resolución* recurrida[2] del Tribunal de Primera Instancia (en adelante, el TPI), declare Con Lugar la solicitud de sentencia sumaria, ordene la devolución de los $5,000.00 dólares que fueron dados como adelanto, se decrete el Contrato resuelto y se ordene la devolución de las contraprestaciones que son, los planos confeccionados por el Arquitecto Edgardo L. Pérez (en adelante, Arquitecto Pérez y/o señor

---

[1] Véase *Orden Administrativa OATA-2023-001* del 9 de enero de 2023 en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Laura I. Ortíz Flores.
[2] Emitida y notificada el 15 de septiembre de 2022. Apéndice de la parte peticionaria a las págs. 29-36.

Número Identificador

RES2023 _____

Pérez) y la compensación que la parte peticionaria le pagó por los mismos.

Por los fundamentos que expondremos a continuación, y revisados los autos ante el TPI[3], se deniega la expedición del auto de *Certiorari.*

**I**

El 26 de junio de 2020, el señor Pérez, la señora Margamarie Miranda De Jesús (en adelante, señora Miranda De Jesús) y la sociedad legal de gananciales compuesta por ambos (en adelante, SLG y en conjunto, parte recurrida), presentaron una *Demanda[4]* en cobro de dinero e incumplimiento de contrato contra el señor Brito y Brito Development Group. La *Demanda* surge debido a que el 17 de abril de 2020, el señor Brito y Brito Development Group alegadamente le notificaron de forma unilateral y sin previa notificación al Arquitecto Pérez que prescindiría de sus servicios y le instruyeron que no se mantuviese trabajando en la terminación de los planos.[5] En la demanda el señor Pérez y la señora Miranda de Jesús solicitaron: (i) que se condenara al señor Brito y a Brito Development Group pagarles solidariamente la suma vencida, líquida y exigible de $236,040.00 dólares más intereses acumulados desde la fecha de terminación unilateral que le son adeudados, según el contrato; (ii) que se condenara al señor Brito y a Brito Development Group al pago de gastos, costas, honorarios de abogados por temeridad e intereses legales (desde la fecha en la cual la parte demandada dio por terminado el contrato) hasta el pago de lo adeudado; (iii) que se prohíba la utilización del contenido de los planos presentados por el Arquitecto Pérez, a los cuales los

---

[3] Este Tribunal evaluó en lo pertinente, el expediente del caso de autos ante el TPI, a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), con especial énfasis a las alegaciones originales de las partes, la solicitud de sentencia sumaria y su oposición.
[4] Apéndice de la parte peticionaria a las págs. 381-384.
[5] Apéndice de la parte peticionaria a la pág. 382.

demandantes mantendrían su derecho de propiedad intelectual, hasta tanto el señor Brito y Brito Development Group pagaran la totalidad de lo adeudado por el trabajo ejecutado por el Arquitecto Pérez.[6]

El 10 de septiembre de 2020, el señor Brito y Brito Development Group presentaron *Contestación a Demanda y Reconvención.*[7] En el escrito el señor Brito y Brito Development Group alegaron que el Contrato se dio por terminado el 17 de abril de 2020, debido al incumplimiento del Arquitecto Pérez con el contrato, fraude en la contratación y representaciones falsas del Arquitecto Pérez sobre su capacidad económica, pericia e infraestructura para cumplir con lo contratado.[8] Además, alegaron que pagaron todo lo que correspondía por el contrato, por lo que no existía una cantidad líquida y exigible que se adeudara.[9] En la reconvención solicitaron que el TPI: (i) condenara al Arquitecto Pérez al pago de $5,000.00 dólares en reembolso de la cantidad pagada; (ii) declarara el Contrato nulo por vicios en el consentimiento; (iii) ordenara la devolución de las contraprestaciones, incluyendo los $40,000.00 dólares entregados al Arquitecto Pérez; y (iv) se condenara al Arquitecto Pérez a resarcir la cantidad de $545,000.00 dólares que corresponde a la cantidad adicional que tuvieron que pagar a la nueva firma de arquitectura que tuvieron que contratar.[10]

Posteriormente, el 7 de octubre de 2020, el señor Pérez, la señora Miranda De Jesús y la SLG, por ellos compuesta, presentaron *Contestación a Reconvención.*[11] Le solicitaron al TPI que declarara No Ha Lugar las peticiones realizadas en la reconvención.[12] Alegaron en síntesis que: (i) el pago de $10,000.00

---

[6] Apéndice de la parte peticionaria a las págs. 383-384.
[7] Apéndice de la parte peticionaria a las págs. 373-380.
[8] Apéndice de la parte peticionaria a la pág. 374.
[9] Apéndice de la parte peticionaria a las págs. 374 y 376.
[10] Apéndice de la parte peticionaria a las págs. 379-380.
[11] Apéndice de la parte peticionaria a las págs. 368-372.
[12] Apéndice de la parte peticionaria a la pág. 371.

dólares es el pago crítico donde el cliente, en este caso el señor Brito, confirmaba el proseguir del proyecto, y que era parte de la estructura acordada entre ellos; (ii) el pago de $10,000.00 dólares le correspondía al señor Brito; y, (iii) que por un error completamente involuntario se envió la factura por segunda ocasión sobre el pago de $10,000.00 dólares, pero que el Arquitecto Pérez solo cobró la cantidad una vez.[13]

Así las cosas, el 8 de abril de 2022, la parte peticionaria presentó una *Moción de Sentencia Sumaria*.[14] En dicha moción solicitaron al TPI que dictara sentencia desestimando la demanda en su totalidad y que en su lugar se condenara al señor Pérez, a la señora Miranda de Jesús y a la SLG, por ellos compuesta, a devolverles los $40,000.00 dólares pagados por los planos y conceptos que el Arquitecto Pérez retuvo, los $5,000.00 dólares por sobrepago, más las costas y honorarios de abogado por frivolidad.[15]

La parte recurrida presentó su oposición a la misma y a su vez, presentaron una moción de sentencia sumaria el 2 de junio de 2022, en el escrito intitulado, *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria*.[16] En síntesis solicitaron al TPI que: (i) declarara No Ha Lugar la *Moción de Sentencia Sumaria* radicada por el señor Brito; (ii) declarara Ha Lugar su *Solicitud de Sentencia Sumaria*; (iii) condenara al señor Brito a pagar solidariamente la suma de $231,040.00 dólares; y (iv) condenara al señor Brito al pago de las costas, honorarios por temeridad e intereses legales hasta el pago de lo adeudado.[17] Por su parte, el 21 de julio de 2022, la parte peticionaria presentó *Réplica a "Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria"*.[18]

---

[13] Apéndice de la parte peticionaria a la pág. 369.
[14] Apéndice de la parte peticionaria a las págs. 336-372.
[15] Apéndice de la parte peticionaria a la pág. 347.
[16] Apéndice de la parte peticionaria a las págs. 66-335.
[17] Apéndice de la parte peticionaria a la pág. 81.
[18] Apéndice de la parte peticionaria a las págs. 37-61.

El 15 de septiembre de 2022, el TPI emitió y notificó *Resolución*[19]. En la misma, el TPI concluyó que: "Luego de evaluar los escritos presentados, el tribunal concluye que no debe utilizar el mecanismo de sentencia sumaria para resolver la totalidad de este caso, ya que existen controversias de hechos genuinas que, según su juicio, deben dilucidarse en una vista de juicio en su fondo".[20]

El TPI dispuso, además, declarando No Ha Lugar la *Moción de Sentencia Sumaria* presentada por el señor Brito y Brito Development Group y también declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por el señor Pérez, la señora Miranda De Jesús y la SLG, por ellos compuesta. En su consecuencia, ordenó la continuación de los procedimientos. Como parte de su dictamen, el TPI consignó trece (13) determinaciones de hechos, como no controvertidos, los cuales se detallan a continuación:

1. Mediante propuesta de servicios profesionales de 21 de mayo de 2019, el Arquitecto Edgardo Pérez (Arquitecto o Demandante) propuso los términos mediante los cuales éste proveería "servicios profesionales para diseño, planos de construcción, certificación de documentos de construcción y servicios durante la construcción", relacionados con un proyecto tipo "Senior Living" de 177 unidades de vivienda a desarrollarse en la Carretera Estatal Núm. 837 de Guaynabo Puerto Rico (el Proyecto).[21]

2. En torno al pago por los servicios del Arquitecto, el Contrato provee para el pago **basado en tareas** (énfasis suplido) - las que el Demandante dividió en cuatro fases como sigue:

   Etapa 1

   | | |
   |---|---|
   | Etapa inicial de concepto del proyecto Esquemático -------- | $40,000 |

   Desglosado de las siguientes maneras [sic]:

   | | |
   |---|---|
   | a. Al aceptar la propuesta ----- | $10,000 |
   | b. Al presentar el plano conceptual-------------------- | $10,000 |
   | c. Al completar esquemático -- | $10,000 |
   | d. Al completar proceso de radicación Anteproyecto --- | $10,000 |

---

[19] Apéndice de la parte peticionaria a las págs. 29-36.
[20] Apéndice de la parte peticionaria a la pág. 36.
[21] Apéndice de la parte peticionaria a la págs. 332-335.

Etapa 2
Desarrollo final del diseño y Documentos de construcción para presentar en competencia y/o aplicar para fondos federales --------------- $85,000

Desglosado de las siguientes maneras [sic]:

a. Orden de proceder----------- $10,000

b. Al completar documento de construcción de arquitectura (planos y especificaciones) ---- $25,000

c. Al completar documentos de construcción de Fases de Ingenieros

| | | |
|---|---|---|
| 1. | Estructura | $10,000 |
| 2. | Mecánico | $10,000 |
| 3. | Eléctrico | $10,000 |
| 4. | Civil | $10,000 |
| 5. | Consultor de Permisos | $10,000 |

Etapa 3
Adjudicación del proyecto. Una vez llevada a cabo la transacción financiera para viabilizar el proyecto ----------- $390,000.00

Etapa 4
Etapa de Servicios Durante Construcción (Dividido en pagos mensuales durante el periodo de construcción) ------ $150,000.00

Total de Honorarios         $650,000.00.[22]

3. Cónsono con el Contrato, el Dueño le pagó al Arquitecto Pérez la cantidad de $30,000.00, relacionados con las Etapa 1(a) "Al aceptar la propuesta"; Etapa 1(b) "Al presentar plano conceptual"; y Etapa 1(c) "Al completar esquemático".[23]

4. El Arquitecto no facturó la Etapa 1(d) "Al completar proceso de radicación Anteproyecto", debido a que el Proyecto no requería la presentación de un Anteproyecto de construcción.[24]

5. El 10 de enero de 2020, a solicitud del Arquitecto Pérez, el Dueño le pagó al Arquitecto $10,000.00 adicionales relacionados con la Etapa 2(a) del Contrato- "Orden de Proceder".[25]

---

[22] Apéndice de la parte peticionaria a las págs. 333-334.
[23] Apéndice de la parte peticionaria a la pág. 86.
[24] *Id.*
[25] Apéndice de la parte peticionaria a la pág. 358.

6. Además, a solicitud del Arquitecto Pérez, el Dueño le desembolsó $5,000.00, como adelanto al Contrato, a la consultora de permisos del Arquitecto.[26]

7. Sobre la gestión de los permisos del Proyecto, el Contrato dispone que:

    [L]os servicios del arquitecto incluyen la gestión y obtención de todos los endosos, autorizaciones y permisos correspondientes al proyecto para la construcción y ocupación, exceptuando Consulta de Ubicación. De ser necesario la radicación de Consulta de Ubicación conlleva un costo adicional de veinte mil dólares ($20,000.00).[27]

8. El 7 de abril de 2020, el Arquitecto le remitió la factura "#37##" mediante la cual solicitó el pago de $10,000.00 "por servicios prestados hasta el 7 de abril de 2020", por concepto de "Orden a proceder planos de construcción".[28]

9. No obstante, los $10,000.00, por dicha partida, había, sido pagados el 10 de enero de 2020.[29]

10. El 17 de abril de 2020 el Dueño le comunicó al Arquitecto verbalmente que habían tomado la decisión de terminar el Contrato.[30]

11. La terminación de servicios fue confirmada mediante comunicación escrita de 4 de mayo de 2020.[31]

12. Sobre la facultad para terminar el Contrato, la cláusula 9 de dicho Contrato dispone que:

    Cualquiera de las partes podrá dar por terminado el presente acuerdo mediante notificación escrita de la otra. Además, se dará por terminado este acuerdo sino le son asignados al proyecto los fondos necesarios para su desarrollo y construcción.[32]

13. Al momento de la terminación del Contrato, el Arquitecto no había "completado" los planos arquitectónicos del Proyecto.[33]

Por otra parte, en la Resolución emitida, el TPI también consignó asuntos que estimó, se encuentran controvertidos, los cuales requieren ser adjudicados luego de un desfile de prueba donde se conceda el correspondiente valor probatorio. En síntesis, el TPI entendió que al menos, los siguientes asuntos se encuentran

---

[26] Apéndice de la parte peticionaria a la pág. 359.
[27] Apéndice de la parte peticionaria a la pág. 334.
[28] Apéndice de la parte peticionaria a la-pág. 360.
[29] Apéndice de la parte peticionaria a la pág. 358.
[30] Apéndice de la parte peticionaria a la pág. 84.
[31] Apéndice de la parte peticionaria a la pág. 364.
[32] Apéndice de la parte peticionaria a la pág. 335.
[33] Apéndice de la parte peticionaria a la pág. 84.

controvertidos: (i) si la propuesta (de servicios profesionales) fue aceptada por el señor Brito como representante de Metro Avanti Properties Inc. h/n/c "Brito Development Group" convirtiéndose la propuesta en el Contrato entre las partes; (ii) si conforme a la estructura de pagos del Contrato, el desembolso por el "Consultor de Permisos" no procede hasta "completar los documentos de construcción de Fases de ingenieros"; (iii) si el Arquitecto Pérez y su consultora de permisos no gestionaron ni obtuvieron permiso ni autorización alguna, en torno al Proyecto y; (iv) si al momento de la terminación del Contrato el Arquitecto Pérez no había completado los documentos de construcción de Fases de Ingenieros, sino que según alegó el Arquitecto Pérez, dichos consultores "estaban listos para preparar sus dibujos".[34]

A raíz de ello, el 11 de octubre de 2022 la parte aquí peticionaria presentó una *Moción de Reconsideración*.[35] Por su parte, la parte aquí recurrida presentó una *Moción en Cumplimiento de Orden y Oposición a Reconsideración* el 31 de octubre de 2022.[36] Mediante *Resolución* emitida y notificada el 1 de noviembre de 2022, el TPI declaró No Ha Lugar la *Moción de Reconsideración* y Ha Lugar la *Moción en Cumplimiento de Orden y Oposición a Reconsideración*.[37]

No conforme con la determinación del foro primario, el 29 de noviembre de 2022, el señor Brito y Brito Development Group acudieron ante nos, mediante recurso de *Certiorari*, donde alegaron la comisión de cinco (5) errores por el TPI, a saber:

> **Primer Error –** Erró el TPI y abus[ó] de su discreción al determinar que existen controversias de hechos que impiden dictar sentencia sumaria.
>
> **Segundo Error –** Erró el TPI al determinar que no procede dictar sentencia desestimando en forma sumaria la reclamación de cobro de dinero.

---

[34] Apéndice de la parte peticionaria a las págs. 34-35.
[35] Apéndice de la parte peticionaria a las págs. 20-28.
[36] Apéndice de la parte peticionaria a las págs. 2-7.
[37] Apéndice de la parte peticionaria a la pág. 1.

**Tercer Error –** Erró el TPI al rehusar atender la solicitud de desestimación de la solicitud de orden por falta de justiciabilidad.

**Cuarto Error –** Erró el TPI [al] denegar la solicitud de que se le condene al demandante a devolver los $5,000 que reconoció fueron dados como adelanto.

**Quinto Error** – Erró el TPI al rehusar ordenar la devolución de las contraprestaciones.

El 27 de diciembre de 2022, la parte recurrida presentó ante nos un *Escrito Fijando Posición y Oposición al Certiorari*. Alegaron que el recurso de *Certiorari* ante nos es producto de planteamientos frívolos y temerarios. Alegan que es incorrecta la posición planteada en el recurso de que los trabajos no se llevaron a cabo, según ellos, lo cual consta en los correos electrónicos. Solicitaron que se impusiera una sanción respecto a ese particular y que se declarara No Ha Lugar la expedición del recurso de *Certiorari.*

Con el beneficio de la posición de ambas partes, procederemos a disponer del recurso ante nuestra consideración.

## II

### A. **Expedición del recurso de *Certiorari***

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[38] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios,

---

[38] R.P. Civ. 52.1, 32 LPRA Ap. V.

anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión**. [39] Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. [40] (Énfasis suplido).

El *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior.[41] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[42] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[43] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[44] La Regla 40 del Reglamento del Tribunal de Apelaciones, esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del

---

[39] R.P. Civ. 52.1, 32 LPRA Ap. V.
[40] R.P. Civ. 52.1, 32 LPRA Ap. V.
[41] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[42] *Id.*
[43] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[44] *Id.*

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [45]

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. [46] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[47]

## B. La discreción judicial

**Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción**.[48] (Énfasis suplido). Un tribunal de justicia incurre en un abuso de discreción: cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[49]

---

[45] 4 LPRA Ap. XXII-B, R.40.
[46] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[47] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[48] *SLG Zapata-Rivera v. J.F. Montalvo, supra,* 434. *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[49] *Pueblo v. Rivera Santiago, Id.*

### C. La Sentencia Sumaria

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de Procedimiento Civil[50], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[51] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[52] Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[53]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[54] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[55] Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[56] Por lo tanto, una controversia en torno a hecho no materiales, de existir, no impide que el tribunal dicte una sentencia por la vía sumaria.[57]

En consonancia con lo anterior, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios judiciales y evitar el derroche de dinero y tiempo que

---

[50] 32 LPRA Ap. V. (2009).
[51] *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).
[52] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).
[53] *Id. Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 720-721 (1986). *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 726 (1994). *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).
[54] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001). *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).
[55] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).
[56] *García Rivera et al. v. Enríquez, supra.*
[57] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945 (1993).

implica la celebración de un juicio en su fondo.[58] La Regla 36.3 de Procedimiento Civil[59], detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (i) una exposición breve de las alegaciones de las partes; (ii) los asuntos litigiosos o en controversia; (iii) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (iv) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (v) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (vi) el remedio que debe ser concedido.[60]

Por su parte, la Regla 36.3 inciso (a)(4) de procedimiento Civil dispone:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: …

> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal…[61]

Por otro lado, la Regla 36.3 inciso (c) de Procedimiento Civil lee como sigue:

> (b) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta

---

[58] *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615, 630 (2009). *Padín v. Rossi*, 100 DPR 259, 263 (1971). *William Pérez Vargas v. Office Depot / Office Max, Inc.*, 203 DPR 687, 699 (2019).
[59] 32 LPRA Ap. V (2009).
[60] 32 LPRA Ap. V. R. 36.3 (2009). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). *William Pérez Vargas v. Office Depot / Office Max, Inc., supra*, 698.
[61] R.P. Civ. 36.3 (a)(4), 32 LPRA Ap. V.

> Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. [62]

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[63]

Sin embargo, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[64]

Conforme ha resuelto el Tribunal Supremo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones".[65] Las meras afirmaciones no bastan.[66] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[67]

Ahora bien, reiteradamente el Tribunal Supremo ha indicado que, el mecanismo de sentencia sumaria no es el apropiado para

---

[62] R.P. Civ. 36.3 (c), 32 LPRA Ap. V.

[63] *García Rivera et al. v. Enríquez*, 153 DPR 323 (2001). *Roldán Flores v. M. Cuebas*, 199 DPR 664, 676 (2018). *Lugo Montalvo v. Sol Meliá Vacation*, supra, 225. *SLG Zapata-Rivera v. J. F. Montalvo*, supra, 430.

[64] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, 913. *García Rivera et al. v. Enríquez*, 153 DPR 323, 338 (2001). *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991). *Cuadrado Lugo v. Santiago Rodríguez*, supra, 281. *Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, 721.

[65] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983). *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[66] *Id.*

[67] *Ramos Pérez v. Univisión*, supra, 215. *Roldán Flores v. M. Cuebas, Inc.*, supra, 677.

resolver casos en donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[68] De la misma manera, también ha dicho que "hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[69]

El Tribunal Supremo se expresó en cuanto al proceso de revisión de las sentencias sumarias y estableció que en dicho proceso el Tribunal de Apelaciones debe: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil[70], de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[71]

La sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas;

---

[68] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999). *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994). *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 663 (2017).
[69] *Elías y otros v. Chenet y otros, supra. García López v. Méndez García*, 88 DPR 363, 380 (1963).
[70] 32 LPRA Ap. V (2009).
[71] *Roldán Flores v. M. Cuebas, Inc., supra,* 679. *Meléndez González v. M. Cuebas,* 193 DPR 100, 118-119 (2015).

(iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (iv) como cuestión de derecho, no proceda.[72] Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (i) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (ii) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[73] Las partes no pueden añadir en apelación exhibit[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[74] Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos.[75] También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[76]

### III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este Tribunal intermedio debe determinar, como cuestión de umbral, si procede su expedición. Tal como se desprende del recuento procesal del caso, el recurso ante nos impugna la denegatoria de una solicitud de sentencia sumaria. A raíz de ello, tratándose una solicitud de sentencia sumaria de un escrito de carácter dispositivo, conforme la Regla 52.1 de las Reglas

---

[72] *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335 (2021).
[73] *Meléndez González v. M. Cuebas, supra,* 114.
[74] *Id.*
[75] *Íd.*, a la pág. 115.
[76] *Vera v. Bravo*, 161 DPR 308, 335 (2004).

de Procedimiento Civil[77], estamos en posición de acoger o no el recurso discrecional del *Certiorari* instado.

Es menester destacar, que la revisión de una denegatoria de sentencia sumaria procede *de novo* ante este foro. A los fines de resolver este caso, debemos en primera instancia determinar si las partes cumplieron con los requisitos formales que dimanan de la Regla 36.3 de Procedimiento Civil.[78] Luego de analizada la *Moción de Sentencia Sumaria* presentada por la parte aquí peticionaria y la *Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria* presentada por la parte aquí recurrida, somos del criterio de que las partes cumplieron satisfactoriamente con los requisitos impuestos por la regla antes mencionada. Por consiguiente, nos queda determinar si existe una controversia real sobre hechos materiales y esenciales, y si el TPI aplicó correctamente el derecho.

Evaluado detenidamente el expediente y habiendo considerado de novo los escritos y documentos de las partes en torno a la petición de sentencia sumaria, no advertimos error en la determinación efectuada por el foro recurrido en torno a la existencia de hechos en controversia, ni sobre la consecuente denegación de la resolución sumaria de la causa por la existencia de estos, como cuestión de derecho. Es decir, no encontramos indicio de que el TPI haya actuado de forma arbitraria ni caprichosa, o haya abusado en el ejercicio de su discreción o cometido algún error de derecho. Así pues, conforme a los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones que guían nuestra discreción para ejercer la facultad revisora ante este tipo de recurso, no identificamos fundamentos jurídicos que nos muevan a expedir el auto solicitado.

---

[77] R.P. Civ. 52.1, 32 LPRA Ap. V.
[78] R.P. Civ. 36.3, 32 LPRA Ap. V.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior al juicio en su fondo. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[79] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[80] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el tribunal de instancia.[81]

## IV

Por los fundamentos que anteceden, y luego de haber evaluado el expediente en su totalidad, las posiciones de las partes, aplicando el alcance de nuestra función como tribunal revisor, se deniega la expedición del recurso de *Certiorari.* Se devuelve el caso al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[79] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).
[80] *SLG v. Pauneto Rivera*, 130 DPR 749, 755 (1992).
[81] *Id.*, 756.